

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00142-CR

———————————————

DANIEL WAYNE PACK, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR23262

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

A jury found Appellant Daniel Wayne Pack guilty of the offense of murder. *See* Tex. Penal Code Ann. § 19.02(b). Pack brings nine points on appeal challenging his conviction. In points one and two, Pack complains that the trial court erred by admitting his custodial statements that referenced a plea bargain and by not granting a mistrial after the custodial statements were published to the jury. In points three through six, Pack argues that the trial court abused its discretion by admitting a knife into evidence and testimony and photographs relating to the knife. Pack argues in the seventh point that his plea of true to the enhancement allegation was not knowing and voluntary. In points eight and nine, Pack complains that the trial court erred by admitting crime scene and autopsy photographs into evidence. We affirm.

## I. Background

Because Pack does not challenge the sufficiency of the evidence, we will summarize the facts only briefly. On April 3, 2021, law enforcement responded to a call of a body on the side of the road in Wise County. They identified the deceased as Michael Wesley Bolling from a driver's license found in his pocket. There were lacerations across Bolling's throat and his abdomen. Bolling's manner of death was ruled a homicide from sharp-force injuries.

Pack and his girlfriend, Stacey Winfield, lived with Bolling at the time of his death. Texas Ranger B.J. Hill talked to Pack and Winfield about Bolling's death. Ranger Hill removed a knife that Pack had on his person at their initial encounter, but

2

it was later determined that said knife was not involved in Bolling's death. Pack and Winfield agreed to go with Ranger Hill to the Azle Police Department for an interview. After talking to Winfield, Ranger Hill determined there was probable cause to arrest Pack for Bolling's murder.

After his arrest, Pack gave a statement to Ranger Hill, and that statement was played for the jury. In that statement, Pack admitted to stabbing Bolling and described the knife used in the offense. Pack told Ranger Hill that he gave the knife used in the offense to Scott Ford, his cousin, and that Ford burned the knife. After a conversation with Ford, Ranger Hill located that knife. The knife itself and photographs of the knife were admitted into evidence.

The jury convicted Pack of the murder of Bolling, and the trial court assessed his punishment at sixty years' confinement. This appeal followed.

## II. Custodial Statements

In his first point, Pack argues that the trial court erred by admitting his custodial statements that referenced plea bargaining in exchange for a guilty plea. In his second point, he contends that the trial court erred by not granting a mistrial after those custodial statements were published to the jury.

### A. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). We will not reverse a

trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

Rule 410 of the Texas Rules of Evidence provides that a "statement made during plea discussions with an attorney for the prosecuting authority" is not admissible against the defendant who was a participant in the plea discussions "if the discussions did not result in a guilty or nolo contendere plea or they resulted in a later-withdrawn guilty or nolo contendere plea." Tex. R. Evid. 410(b)(4).

In *Prescott v. State*, this court considered whether the trial court erred by admitting the defendant's statement into evidence over his Rule 410(b)(4) objection. No. 02-17-00158-CR, 2019 WL 2635559, at *1 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op., not designated for publication). We noted that Rule 410(b) parallels the language in Federal Rule of Evidence 410(a). *Compare* Tex. R. Evid. 410(b), *with* Fed. R. Evid. 410(a). "When a Texas rule of evidence is patterned on a federal counterpart, we find it appropriate to look to federal cases and commentary for guidance." *Prescott*, 2019 WL 2635559, at *1 (quoting *Bruton v. State*, 428 S.W.3d 865, 873 (Tex. Crim. App. 2014)). Accordingly, we will look to the federal courts' interpretation of their Rule 410. *See id.*

In *Prescott*, we followed the reasoning of the Fifth Circuit in our analysis of the trial court's decision to admit the statement and set out our review by stating:

The Fifth Circuit has observed that statements made by a defendant other than in the course of plea negotiations do not come under the ambit of [R]ule 410 and has held that to determine whether a discussion should be characterized as a "plea negotiation," the trial court should carefully consider the totality of the circumstances and apply a two-tiered analysis. *United States v. Robertson*, 582 F.2d 1356, 1365–66 (5th Cir. 1978). First, the court must determine whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion. *Id.* at 1366. The initial inquiry into the accused's subjective state of mind must be made with care to distinguish between those discussions in which he was merely making an admission and those in which he was seeking to negotiate a plea agreement, i.e., seeking a government concession. *Id.* at 1367, 1369. And then the court must determine whether the accused's subjective expectation was reasonable given the totality of the objective circumstances. *Id.* at 1366; *see also Monreal v. State*, 947 S.W.2d 559, 567 n.4 (Tex. Crim. App. 1997) (Baird, J., concurring and dissenting) (citing *Robertson*, 582 F.2d at 1366).

*Id.* at *2. As in *Prescott*, we will review the trial court's decision to admit Pack's statement using the Fifth Circuit's guidance.

## B. Discussion

After his arrest on April 8, 2021, Pack gave a statement to Ranger Hill that was played before the jury. As the video of the custodial interrogation was played for the jury, the trial court asked that it be paused. The trial court then instructed the jury to disregard any "discussions about lawyers being appointed and things such as that" and not to consider those remarks for any purpose. The trial court stated that such discussions needed to be redacted from the exhibit. Pack's trial counsel did not make any objection and stated that "I believe the Court gave the appropriate instruction to the jury."

5

On May 18, 2021, Pack remained in custody for Bolling's murder, and he indicated that he wanted to speak to Wise County Investigator Christopher Ratliff. Investigator Ratliff agreed to talk to Pack, and he recorded the interview. During that interview, Pack said, "so I don't know if my charge could get dropped to assault with a deadly weapon or whatever." Pack's counsel objected to the statement being played for the jury because it included plea bargaining. In overruling the objection, the trial court noted that the statement was allowed because Pack initiated the conversation. The statement was played before the jury.

As to the statements concerning the appointment of counsel, the trial court instructed the jury to disregard those statements. Pack's trial counsel did not object or request any further relief and agreed that the trial court's instruction was appropriate. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Because it is a systemic requirement, this court has a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Because he did not object to the trial court's instruction or request any relief, Pack has not preserved his complaint for our review. *See* Tex. R. App. P. 33.1(a).

Now we turn to Pack's statement to Investigator Ratliff that was played before the jury. In *Prescott*, the defendant was charged with evading arrest. *Prescott*, 2019 WL 2635559, at *1. At the defendant's request, he and his counsel met with the prosecutor in a conference room. *Id.* at *2. The defendant's counsel warned the defendant that anything he said could be used in court. *Id.* The defendant asked the prosecutor if he thought there was enough evidence in the case. *Id.* at *3. The defendant then stated to the prosecutor that he had heard the officer announce "police" before they came through the door. *Id.* The trial court admitted the statement over a Rule 410(b)(4) objection. *Id.*

We overruled the defendant's complaint and observed that the record did not reflect that the parties were undergoing plea discussions when the defendant made his statement. *Id.* We concluded that the trial court could have reasonably determined that the defendant had no subjective expectation that his statement was protected as part of plea-bargain negotiations. *Id.* We further concluded that the evidence did not objectively show a plea-bargain discussion when the defendant did not offer to plead guilty in exchange for anything during his conversation with the prosecutor. *Id.*

Pack argues that this case is distinguishable from *Prescott* because he was not represented by counsel at the time he made the statements and because he was clearly trying to negotiate a less serious outcome of the case. We disagree.

Pack was given his *Miranda*[1] warnings prior to speaking to Investigator Ratliff. Therefore, like the defendant in *Prescott*, Pack was aware that his statement could be used against him. Pack initiated the conversation, and the record does not reflect that Investigator Ratliff in any way participated in a plea-bargain discussion. Moreover, there is nothing in the record to indicate Investigator Ratliff was authorized to engage in plea-bargain discussions or that "an attorney for the prosecuting authority" participated in the discussion. *See* Tex. R. Evid. 410(b)(4). Although Pack may have hoped for a reduction in the charges against him, the trial court could have reasonably determined that he had no subjective expectation that his statement was protected as part of plea-bargain negotiations. As in *Prescott*, the trial court could have reasonably concluded that the evidence did not objectively show a plea-bargain discussion when Pack did not offer to plead guilty in exchange for anything. *See Prescott*, 2019 WL 263559, at *3. We hold that the trial court did not abuse its discretion by admitting Pack's statement to Investigator Ratliff. We overrule Pack's first point.

In his second point, Pack argues that the trial court erred by not granting a mistrial after his custodial statements referencing plea-bargain discussions were played for the jury. The record does not reflect that Pack requested a mistrial. When the defendant does not move for a mistrial, no error is preserved for appeal. *See Dominguez v. State*, 125 S.W.3d 755, 763 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Therefore, Pack has not preserved his complaint for review. *See* Tex. R. App. P.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

8

33.1(a)(1); *Tran v. State*, No. 02-11-00310-CR, 2012 WL 5447939, at *2 (Tex. App.—Fort Worth Nov. 8, 2012, pet. ref'd) (mem. op., not designated for publication). We overrule Pack's second point.

### III. Admission of a Knife and Related Evidence

In points three through six, Pack complains about the trial court's admission into evidence a knife and evidence concerning the knife. Pack specifically complains that the trial court abused its discretion by (1) admitting the knife into evidence because it was not shown to be linked to the offense, (2) admitting hearsay testimony into evidence regarding where the knife was discovered, (3) admitting speculative testimony into evidence that the knife was the actual weapon used to commit the offense, and (4) admitting photographs of the knife into evidence.

### A. Applicable Law

As previously stated, we review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Zuliani*, 97 S.W.3d at 595. If the trial court's evidentiary ruling is correct on any applicable theory of law, we will not disturb it even if the trial court gave the wrong reason for its correct ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Qualls v. State*, 547 S.W.3d 663, 675 (Tex. App.—Fort Worth 2018, pet. ref'd).

Evidence is relevant if (1) it has any tendency to make a fact more or less probable than it would be without the evidence, and (2) the fact is of consequence in determining the action. Tex. R. Evid. 401. Relevant evidence is admissible unless

prohibited by the United States or Texas Constitutions, a statute, the rules of evidence, or other rules prescribed under statutory authority. Tex. R. Evid. 402.

**B. Discussion**

Pack's complaints all concern the knife recovered by Ranger Hill after his conversation with Ford. At trial, Pack objected to the admission of the knife itself and pictures of the knife because there was no DNA evidence linking the knife to the offense and because Ford was not available to be cross-examined about the knife. Pack specifically complains that the evidence of the knife was not relevant under Rules 401 and 402. We disagree.

Pack argues that there is "nothing to show any relevance to the context of the offense or to any other issue in the case," quoting *Couret v. State*, 792 S.W.2d 106, 108 (Tex. Crim. App. 1990). According to Ranger Hill, Pack told him that he gave the knife used in the offense to Ford and that Ford burned the knife. Pack described the knife used in the offense in detail stating that it had "jagged sawtooth"-type things on the top of the knife. Ranger Hill was able to locate a knife matching that description after a conversation with Ford. Although there is no DNA evidence linking the knife to Pack, there was testimony and evidence linking the knife to the offense and to Pack. Unlike *Couret*, we cannot say that the knife was not relevant to the offense.

Likewise, the photographs of the knife were also relevant to the offense. *See Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004). Photographs that are genuinely helpful to the jury are admissible. *Id.* Here, the testimony and evidence

10

linked the knife to the offense and to Pack. The trial court did not abuse its discretion in admitting the knife and photographs of the knife into evidence. We overrule Pack's third and sixth points.

Pack also contends that the trial court abused its discretion by admitting the hearsay testimony of where the knife was discovered. Ranger Hill testified that Pack told him that he gave the knife to Ford and that Ford burned the knife and disposed of it. Ranger Hill stated that he located Ford and "convinced him to tell me where the knife was." The State asked Ranger Hill, "Did he not only tell you where it was but lead you to the location where you -- you were able to recover it?" Pack's counsel objected "to what he told him as to where the location was. It's hearsay." The State rephrased the question and asked, "Based upon your conversation with Scott Ford, did you go to a location and recover the knife?" Ranger Hill answered without objection, "Yes."

Pack made an initial objection, but he did not obtain a ruling from the court. *See* Tex. R. App. P. 33.1(a)(2); *Moreno v. State*, 1 S.W.3d 846, 857 (Tex. App.—Corpus Christi–Edinburg 1999, pet. ref'd). And after the State rephrased the question, Pack did not renew his objection. Thus, Pack did not preserve any complaint relating to that objection. *Moreno*, 1 S.W.3d at 857. We overrule Pack's fourth point.

Pack contends that the trial court abused its discretion by admitting speculative testimony into evidence that the knife was the actual weapon used in committing the offense. When admitting the knife into evidence, the State asked if it was the knife

11

Ranger Hill believed was actually used in the murder of Bolling, and Ranger Hill responded, "Yes, sir." Pack's trial counsel objected based upon speculation.

An objection that a question calls for speculation brings into play Rules 602 and 701 of the Texas Rules of Evidence. *See* Tex. R. Evid. 602 ("Need for Personal Knowledge"), 701 ("Opinion Testimony by Lay Witnesses"). Ordinarily, testimony not based on personal knowledge is "incompetent" speculation under Rule 602. *McCann v. State*, No. 02-19-00397-CR, 2020 WL 6326148, at *5 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op., not designated for publication); *Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd). But lay-witness opinion testimony is admissible if it is (a) rationally based on the witness's perception and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. *See* Tex. R. Evid. 701; *McCann*, 2020 WL 6326148, at *5. The perception-based component of Rule 701 "presumes the witness observed or experienced the underlying facts, thus meeting the personal-knowledge requirement of [R]ule 602." *McCann*, 2020 WL 6326148, at *5. In addition, the requirement that an opinion be rationally based on the witness's perception is composed of two parts: "(1) the witness must establish personal knowledge of the events from which his opinion is drawn and (2) the opinion drawn must be rationally based on that knowledge." *Id.* (quoting *James v. State*, 335 S.W.3d 719, 723 (Tex. App.—Fort Worth 2011, no pet.)).

Here, Pack told Ranger Hill that he gave the knife used in the offense to Ford and that Ford burned the knife and disposed of it. Ranger Hill located the knife after his conversation with Ford. The trial court did not abuse its discretion in allowing Ranger Hill to give a logical opinion based upon his observations and investigation. *See McCann*, 2020 WL 6326148, at *6. We overrule Pack's fifth point.

## IV. Enhancement of Punishment

In the seventh point, Pack argues that because the trial court failed to admonish him as to the punishment range if he entered a plea of true to the enhancement, his plea of true was not knowing and voluntary.

At the guilt–innocence phase of the trial, the indictment was read, and Pack entered a plea of not guilty. The enhancement paragraph for punishment was not read at that time. At the punishment phase of the trial, the enhancement paragraph was read to Pack, and he entered a plea of true. No admonishments were given to Pack prior to his plea of true to the enhancement.

Pack argues that Article 26.13 of the Code of Criminal Procedure required that he be admonished on the consequences of his plea of true, including the punishment range. Article 26.13(a)(1) requires the trial court to admonish the defendant on the range of punishment prior to accepting a plea of guilty or a plea of nolo contendere. Tex. Code Crim. Proc. Ann. art. 26.13(a)(1). Pack cites *Taylor v. State* as authority for his argument. 591 S.W.2d 826 (Tex. Crim. App. [Panel Op.] 1979).

13

In *Taylor*, the Court of Criminal Appeals held that the trial court erred by failing to admonish the defendant on the range of punishment as required by Article 26.13(a)(1). *Id.* at 827. The defendant entered a plea of guilty to the offense of aggravated robbery. *Id.* The trial court admonished the defendant on punishment but did not admonish him as to the punishment that would attach if the conviction were enhanced by the two prior felony convictions, i.e., mandatory life imprisonment. *Id.* at 828. The court stated that the defendant was not made aware of the consequences of his plea and held that the trial court did not comply with Article 26.13(a)(1). *Id.*

*Taylor* is distinguishable from the case before us. In *Taylor*, the trial court failed to admonish the defendant that a plea of true to the enhancements would result in a mandatory life sentence. *Id.* Once the defendant learned of the proper punishment range, he wanted to withdraw his plea of guilty to the offense. *Id.* at 827. Here, Pack did not enter a plea of guilty to the charged offense, and the trial court did not incorrectly admonish Pack on the applicable punishment range. In addition, Pack's plea of true to the enhancement paragraph did not result in a mandatory life sentence.

The case before us is more analogous to *Seagraves v. State*, where the question before the court was "whether or under what circumstances the trial court is required to admonish the defendant on the range of punishment for the enhanced punishment." 342 S.W.3d 176, 181 (Tex. App.—Texarkana 2011, no pet.). Citing *Sylvester v. State*, 615 S.W.2d 734, 736 (Tex. Crim. App. [Panel Op.] 1981), the court held that because Texas has a bifurcated trial procedure where guilt is determined in

14

one proceeding and punishment in another, the provisions of Article 26.13 do not apply to the separate punishment trial. *Seagraves*, 342 S.W.3d at 181. The court stated that this is true even if the defendant entered a plea of "true" to the enhancement allegations during the punishment proceeding. *Id.* The court further stated that the better practice is to provide an admonishment on the potential punishment range, but the statute does not require it. *Id.*

We agree with the reasoning of our sister court that the better practice is to provide the admonishment, but we hold that the provisions of Article 26.13 do not apply to punishment proceedings. *See id.* In addition, Pack was represented by counsel, and he has not shown that he did not understand the consequences of his plea of true to the enhancement allegation. *See id.* at 183. We overrule Pack's seventh point.

## V. Crime Scene and Autopsy Photographs

In his eighth and ninth points, Pack complains that the trial court abused its discretion by admitting several crime scene and autopsy photographs over his Rule 403 objections because they were graphic, gruesome, and cumulative.

### A. Applicable Law

Rule 403 provides that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative

than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery*, 810 S.W.2d at 389; and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication)). Because of this presumption, it is the burden of the party opposing the admission of the evidence to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403. *Id.* at 547.

## B. Crime Scene Photographs

Pack's trial counsel objected at trial to the admission of State's Exhibits 10, 14 through 18, 20, and 23 stating, "[T]hey are gruesome and will inflame the jury against [Pack]. Whatever probative value, Judge, is substantially outweighed by the danger of unfair prejudice, and they're also cumulative pictures that have already been admitted into evidence." The State responded that the pictures depicted the position of Bolling's body where it was found and showed his injuries.

On appeal, Pack complains that the trial court erred by admitting State's Exhibits 10, 16, 17, 18, and 23 because State's Exhibit 10 was cumulative of State's Exhibit 9, State's Exhibits 16, 17, and 18 were cumulative of State's Exhibit 15, and because State's Exhibits 18 and 23 were particularly gruesome. He further argues that the probative value is substantially outweighed by the unfair prejudice.

State's Exhibit 10 depicts Bolling's head and shoulders from a side view specifically showing injuries to his face and neck. State's Exhibits 16 and 17 are of

Bolling's head, neck, and shoulders from a top view at different angles and show the injuries to his face and neck. State's Exhibit 16 provides a different view of the neck injury. State's Exhibit 18 is a photograph of Bolling's neck and torso emphasizing the neck injury. State's Exhibit 23 is a photograph of Bolling's abdomen injury and shows fire ants on the wound.

A court may consider many factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice. *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). These factors include: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case. *Id.* The admissibility of photographs over an objection is within the sound discretion of the trial judge. *Id.* In *Williams*, the court held that the photographs had probative value because they depicted the crime scene and the victim's injuries and that they portrayed no more than the gruesomeness of the injuries. *Id.* at 692.

Here, there were not an overly large number of photographs admitted into evidence. The five photographs specifically complained of were in color, but they were not excessively large photos, and they did not depict a nude body. Ranger Hill testified as to what was depicted in each of the photographs, and he explained how the different angles of the photographs showed different injuries and how they were

relevant to the investigation. The State did not spend a significant amount of time developing the evidence relating to the photographs.

State's Exhibits 10, 16, 17, and 18 provide context to Ranger Hill's description of the crime scene and the injuries Bolling suffered. *See id.*; *Odom v. State*, No. 2- 09-096-CR, 2010 WL 2331439 at *8 (Tex. App.—Fort Worth June 10, 2010, no pet.) (mem. op., not designated for publication). State's Exhibit 23 is not excessively gruesome and depicts a true representation of Bolling's body when it was discovered. *See Odom*, 2010 WL 2331439 at *8. The trial court could have reasonably determined that the complained-of photographs were not inflammatory enough to create unfair prejudice that outweighed their probative value. *See id.* We hold that the trial court did not abuse its discretion by overruling Pack's objection to State's Exhibits 10, 16, 17, 18, and 23. *See id.* We overrule Pack's eighth point.

## C. Autopsy Photographs

On appeal, Pack specifically complains of State's Exhibits 65, 66, 77, 78, 80, and 87. He argues that State's Exhibits 65 and 66 are cumulative of State's Exhibit 64 and that State's Exhibits 77, 78, and 80 are cumulative of State's Exhibit 76. He argues that State's Exhibits 80 and 87 are particularly gruesome. He further argues that the probative value is substantially outweighed by the unfair prejudice.

State's Exhibits 65 and 66 show Bolling's abdominal injury at different ranges. State's Exhibits 77, 78, and 80 depict Bolling's neck injury at different angles. State's Exhibit 87 is a close-up view exposing the internal injury.

18

Autopsy photographs are generally admissible unless they depict mutilation of the victim caused by the autopsy itself. *Williams*, 301 S.W.3d at 690. Pack does not complain that the autopsy photographs depict mutilation of Bolling's body caused by the autopsy itself, and our review of the photographs does not reveal any such mutilation caused by the autopsy. A medical examiner testified at trial and used the photographs to illustrate his testimony. *See Odom*, 2010 WL 2331439, at *8. Specifically, as to State's Exhibit 87, a close-up photograph, the medical examiner stated that the photograph depicts some of the injuries on the internal aspects of Bolling's body. The trial court could have determined that the photographs had probative value because they related to the medical examiner's testimony. *See id.* Although the photographs are somewhat gruesome, they are no more gruesome than the reality of Bolling's murder. *See id.* We hold that the trial court did not abuse its discretion in admitting State's Exhibits 65, 66, 77, 78, 80, and 87. We overrule Pack's ninth point.

## VI. Conclusion

Having overruled all of Pack's points on appeal, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: June 27, 2024

19